Statement.
PROVO STY, J.
Plaintiff obtained a preliminary injunction restraining the defendants, the chairman and members of the democratic parish committee of the parish of Jefferson, from providing the commissioners of election who may be chosen for the “primary,” to be held on January 28, 1908, with tickets bearing the name of Charles W. Ross-ner, Jr., as a candidate for the clerkship of the district court, on the ground that he (plaintiff) complied with the law governing the candidacy for that office, but that Ross-ner did not, in that he failed to pay the amount assessed against him, as required, and that, no one else having qualified, he (plaintiff) is entitled to be declared the nominee of the party, and he prays that the chairman and members of the committee and Ross-ner be cited, and that there be judgment to that effect.
The committee plead the general issue, and Rossner alleges that he complied with the law.
The only question presented for decision is whether Rossner paid his assessment as required by the statute.
It is admitted, or proved (subject to the objection of irrelevancy), that, within the legal delay, he gave the chairman of the committee his check for the amount of his assessment, drawn upon a solvent bank in which he had ample funds, and that he was given a receipt therefor reading:
“Gretna, La. ,Oct. 11th, 1907.
“Received from Mr. O. W. Rossner the sum of seventy-five ($75.00) dollars, together with his application as a candidate for the office of clerk of court in and for the parish of Jefferson, in the Democratic Primary Election to be held on January twenty-eighth (28) 1908.
‘■TSigned] J. B. Dauenhauer,
“Chairman Democratic Parish Committee.”
That the check was deposited by the payee for collection on October 23d, and was paid on presentation October 25, 1907, and that the delay in making the presentation was due to no fault, or act, of the drawer.
The Secretary of State testified that for the purposes of the coming “primary,” as also of that held in 1906, all candidates, save om, made the payments required to be made to. him by checks. Upon the ease as thus presented there was judgment for defendants, and plaintiff has appealed.
Opinion.
The law applicable to the subject is to be found in Act No. 49, § 13 (e), of the acts of 1906 (page 70), and reads as follows:
“That .the respective committees authorized under this act to call primary elections shall, by resolution adopted at the same meeting at which they call said primary, fix the sum assessed against each candidate for the purpose of defraying ..actual expenses to be borne by him as hereinabove provided for, and the amount so fixed and assessed shall be paid by the candidate at the time of filing his written notification of candidacy. Failure to make payment as herein provided will debar all such candidates from, having their names placed on the official ballot for such primary election,” etc.
Plaintiff’s contentions are (1) that payment in the instant case should have been made in lawful money of the United States; (2) that, if payable by check, the check should have been collected within the time limit fixed for the payment of the assessment. There is nothing in the provision quoted, or in any other of the statute, to indicate that it was the purpose of the law makers to obstruct with mere technical difficulties, the exercise of the right, which every citizen has,. *453 to seek the approval of his political associates, or of the public at large. To the contrary, the whole spirit of the legislation is to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way. When, therefore, with that object in view, the law provides that those presenting themselves for approval, by means of a primary election, shall pay the sum assessed against them to defray “actual expenses,” there is no reason to suppose that it is intended that such payments shall be made otherwise than as payments are usually made; that is to say, in lawful money, or by cheeks payable in lawful money, and which, when honored, constitute payments as of the dates upon which they were given.
“When the check is, in fact, paid, upon presentation,” say the authorities, “the payment relates back, so far as regards the extinguishment of the indebtedness, to the time when the check was given.” 22 A. & E. Enc. of Law (2d Ed.) 573, and authorities there cited.
In making payments by check, in cases such as that now under consideration, there is no doubt a certain risk to both the drawer and the payee; for, should the failure to collect it be attributable to the laches of the payee, he would incur some liability, and, in the event of such failure, no matter by whose fault, the drawer would find himself confronted with the fact that the law had not been complied with, since it' is the payment, and not the receipt, of the cheek, which operates to discharge the obligation, though, as we have said, such payment relates back to the moment of the receipt. But we are not here concerned with the case of a cheek that was not paid on presentation, or that would not have been paid if presented when given and received, and we leave the questions which might arise from that situation to be determined when presented. In the case, as presented, we are of opinion that the statute invoked has been reasonably interpreted by the judgment appealed from, which is, accordingly, affirmed.
MONROE, J., takes no part.